**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GREAT LAKES DREDGE & DOCK, COMPANY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-3489 |
| JULIO LARRISQUITU, | § § § | |
| Defendant. | § | |

| | | |
|---|---|---|
| GREAT LAKES DREDGE & DOCK, COMPANY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-3669 |
| FACUNDO QUINTANILLA, | § § § | |
| Defendant. | § | |

| | | |
|---|---|---|
| GREAT LAKES DREDGE & DOCK, COMPANY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-4040 |
| ABEL ARREDONDO, | § § § | |
| Defendant. | § | |

1

## MEMORANDUM AND OPINION

In these three federal suits, Great Lakes Dredge & Dock Company, LLC ("Great Lakes") seek declaratory judgments relating to three underlying state-court suits filed under the Jones Act, 46 U.S.C. § 30104.[1]  The plaintiffs in the state-court actions (the "seamen-plaintiffs"), sued their employer, Great Lakes, in the South Texas counties where they reside. In those state-court actions, the seamen-plaintiffs alleged that they were injured while working for Great Lakes aboard its vessels.  The venue of those state-court suits is inconsistent with forum-selection agreements that Great Lakes required the seamen-plaintiffs to sign.  In these federal actions, Great Lakes seeks declaratory and injunctive relief to enforce the forum-selection agreements.

The seamen-plaintiffs have moved to dismiss the three federal suits under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that this court should abstain from exercising jurisdiction and that the forum-selection agreements are unenforceable as a matter of law.  The parties have submitted briefing on the motions and this court heard argument on July 13, 2007.  Because the threshold legal issues presented in the three motions to dismiss are identical, this Memorandum and Opinion addresses them together.[2]

---

[1]  Congress codified and renumbered the provisions of the federal maritime code under Title 46, effective October 6, 2006.  The Jones Act, which used to appear at 46 U.S.C. app. § 688, is now at 46 U.S.C. § 30104.  *See* Pub. L. No. 109-304, § 6(c), 120 Stat. 1510 (2006).

[2]  Civil Action No. 4:06-cv-3489, Docket Entry No. 4; Civil Action No. 4:06-cv-3669, Docket Entry No. 7; Civil Action No. 4:06-cv-4040, Docket Entry No. 5.

Based on a careful review of the motions, the responses, and replies; the parties' submissions; the arguments of counsel; the record; and the applicable law, this court denies Quintanilla's and Arredondo's motions to dismiss. This court denies in part Larrisquitu's motion to dismiss and converts his remaining argument that the forum-selection agreement is unenforceable as to him because it was procured by overreaching into a motion for summary judgment. The reasons are set out below.

## I.      Background

Julio Larrisquitu, Facundo Quintanilla, and Abel Arredondo, the seamen-plaintiffs, were injured in 2006 while working as crew members on three Great Lakes vessels. Each had signed "Employee Acceptance of Forum Selection" agreements. The agreements state that "any claim for personal, emotional, physical, or economic injury . . . shall . . . be filed, at the option of the employee" in specified courts in the state where the employee resides, in the state where the accident occurred, or in DuPage County, Illinois, where Great Lakes has its principal place of business. The forum-selection agreements designate the state and federal courts in which the employee may bring suit in each of twenty-six states. The forum-selection agreements designate the Harris County state district courts as the permissible Texas state court and the federal district courts in the Southern District of Texas, Houston Division, as the permissible Texas federal court. Another provision requires that disputes about the validity of the forum-selection agreement itself must be filed in one of the specified federal courts. "Any dispute regarding the enforceability of the terms and provisions of this

'Employee Acceptance of Forum Selection' shall be resolved through litigation initiated only in a United States District Court listed in Paragraph 4(c) above." The forum-selection agreements were provided to each seaman-plaintiff in both English and Spanish. Each seaman-plaintiff signed the agreement before beginning to work for Great Lakes.

On September 25, 2006, Larrisquitu sued Great Lakes in Cameron County, Texas, seeking damages under the Jones Act for work-related injuries.[3] On August 31, 2006, Quintanilla sued Great Lakes in Starr County, Texas.[4] On September 20, 2006, Arredondo sued Great Lakes in Hidalgo County, Texas.[5] Both state and federal courts have jurisdiction over Jones Act suits.[6] *See Magnolia Marine Transp. Co. v. LaPlace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992).

Great Lakes appeared in the state-court cases and filed these federal suits to challenge the seamen-plaintiffs' venue choices. On November 6, 2006, Great Lakes filed the *Larrisquitu* suit in federal court and filed an objection to venue in Larrisquitu's state-court suit. On November 19, 2006, Great Lakes sued Quintanilla in this court; on the following

---

[3] *Julio Larrisquitu v. Great Lakes Dredge & Dock Co.*, Cause No. 2006-09-4380-C, in the 197th District Court of Cameron County, Texas.

[4] *Facundo Quintanilla v. Great Lakes Dredge & Dock Co.*, Cause No. CD-06-311, in the 381st District Court of Starr County, Texas.

[5] *Abel Arredondo v. Great Lakes Dredge & Dock Co.*, Cause No. C-2216-06-A, in the 92nd District Court of Hidalgo County, Texas.

[6] The savings to suitors clause provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

day, Great Lakes moved to transfer venue in Quintanilla's state-court suit.  Great Lakes sued Arredondo in this court on December 21, 2006 and filed an objection to venue in Arredondo's Hidalgo County suit the same day.[7]

In these federal cases, Great Lakes seeks a declaratory judgment that the seamen-plaintiffs' Jones Act claims may only be brought in one of the state or federal courts designated in the forum-selection agreements; a declaratory judgment that the seamen-plaintiffs are in breach of the forum-selection agreements; an injunction prohibiting the state-court actions from proceeding; and a declaratory judgment that the seamen-plaintiffs may dismiss their Jones Act claims without prejudice to refiling in a venue allowed by the forum-selection agreements.  Great Lakes also seeks the court costs and attorneys' fees it incurred in bringing these federal actions.

The seamen-plaintiffs have moved to dismiss each of the federal suits.  They argue that this court should abstain from exercising jurisdiction and that the forum-selection agreements are unenforceable as a matter of law.  Each issue is addressed below.

## II.    The Applicable Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders*

---

[7]  In addition, on January 17, 2007, Great Lakes moved the Texas state panel on multidistrict litigation to consolidate several related state-court Jones Act suits, including the *Larrisquitu*, *Quintanilla*, and *Arredondo* cases.

5

*Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  When examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  The Supreme Court recently clarified the standards that apply to a motion to dismiss for failure to state a claim.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1974; *see*

*also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  A plaintiff need not be allowed an opportunity to amend a complaint if  "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. R.K. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

**III.    The Anti-Injunction Act and Abstention**

**A.    The Seamen-Plaintiffs' Motion to Dismiss the Claim for an Injunction (And Declaratory Judgment) Against the State-Court Proceedings:  The Anti-Injunction Act**

Great Lakes seeks an injunction preventing the state suits from proceeding in venues outside those designated by the forum-selection agreements.  The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The Act, on its face, is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.  Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed in an orderly fashion to finally determine the controversy."  *Fulford v. Transp. Servs. Co.*, 412 F.3d 609, 613 (5th Cir. 2005) (internal citations and quotation marks omitted).

The exceptions to the Anti-Injunction Act are narrowly construed.  "[A]ny injunction against state court proceedings . . . must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld."  *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).  Great Lakes correctly does not contend that the first exception to the Anti-Injunction Act applies; Congress has not expressly authorized injunctions against state-court claims under the Jones Act.  *See* 46 U.S.C. § 30104; *see also Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146–47 (1988) (analyzing the Anti-Injunction Act's application to the plaintiff's Jones Act claims and stating that the first exception does not apply).  Nor does Great Lakes contend that the third exception, allowing a court to issue an injunction "to

protect or effectuate its judgments," applies.  This "relitigation" exception allows a federal court to prevent state-court litigation of an issue previously presented to and decided by the federal court.  The exception "is founded in the well-recognized concepts of res judicata and collateral estoppel."  *Chick Kam Choo*, 486 U.S. at 147.  This exception does not apply here because there has been no prior federal litigation among these parties or those in privity with them about the forum-selection agreements at issue.

Great Lakes does contend, however, that the second exception to the Anti-Injunction Act applies.  The second exception allows a court to issue an injunction when "necessary in aid of its jurisdiction."  Great Lakes argues that the "in aid of jurisdiction" exception, in combination with the All Writs Act, 28 U.S.C. § 1651(a), provides this court the authority to enter "narrowly tailored orders" enjoining the state-court suits.  *See Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002).

The "necessary in aid of jurisdiction" exception is designed to "prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  *Atl. Coast Line R.R.*, 398 U.S. at 295.  The "necessary in aid of jurisdiction" exception generally applies when a case is removed from state to federal court and the state-court case continues to proceed, or when a federal court first acquires jurisdiction over real property and a state court also asserts jurisdiction over the same property.  *See Mitchum v. Foster*, 407 U.S. 225, 234–37 (1972); *Texas v. United States*, 837 F.2d 184, 186 n.4 (5th Cir. 1988) ("In cases decided under this

9

exception, courts have interpreted the language narrowly, finding a threat to the court's jurisdiction only where a state proceeding threatens to dispose of property that forms the basis for federal *in rem* jurisdiction, or where the state proceeding threatens the continuing superintendence by a federal court, such as in a school desegregation case.  In no event may the 'aid of jurisdiction' exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision.").

The All Writs Act provides that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  "The Act contains the same language as the second of the three exceptions in the Anti-Injunction Act, and the parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti-Injunction Act."  *Newby*, 302 F.3d at 302 (citing *In re Diet Drugs*, 282 F.3d 220, 239 (3d Cir. 2002); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203 (7th Cir. 1996); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985)).

Great Lakes argues that the state-court suits will interfere with this court's exercise of its jurisdiction to decide whether the forum-selection agreements are enforceable.  Because the forum-selection agreements state that any disputes about their enforceability are to be decided in one of the designated federal courts, Great Lakes contends that without an injunction to prevent the state courts from deciding this issue, this federal court will not be

10

able to do so, making the parties' forum-selection agreement meaningless.  Great Lakes relies on the Fifth Circuit's holding in *Newby* to support its argument that this court has the authority to enjoin the pending state-court Jones Act suits.   *Newby* involved overlapping class action suits proceeding simultaneously in federal and state courts.  The district court presiding over the federal suits enjoined a law firm from filing suits in state court on behalf of many of the same plaintiffs proceeding in the federal court, but did not enjoin all aspects of ongoing state proceedings.  Instead, the federal district court enjoined the law firm from seeking a particular type of *ex parte* relief in the state courts.  The district court enjoined the law firm from filing – without the federal court's permission – such state-court actions that had the effect of disrupting the ongoing federal class actions.  The Fifth Circuit upheld the district court's ability to enjoin "lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to maintain the cooperative approach essential to preserving fair processes in the complex suit in federal court."  *Newby*, 302 F.3d at 301.  However, the Fifth Circuit was not asked to approve a federal court's general injunction against pending state-court actions, which is what Great Lakes asks here.  Nor did the Fifth Circuit hold that a state court asked to decide the same issue pending before a federal court provides sufficient basis for an injunction against that state-court proceeding.  *Newby*, 302 F.3d at 302–04 ("We do not question the filing of suits tailored to avoid federal jurisdiction.  Nor do we countenance any preemptive federal dominion.  The parallel exercise of state and federal judicial power is inherent in our government of dual sovereignty.").

11

*Newby* does not support the application of the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act that Great Lakes seeks here.

The Fifth Circuit's holding in *Royal Insurance Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992), provides further guidance on the limited application of this exception to the Act.  In federal court, Royal Insurance had obtained a declaratory judgment that its policy did not cover federal securities claims brought by numerous investors against the insured, Quinn-L.  Following the no-coverage determination in the federal declaratory judgment action, the investors and Quinn-L agreed to dismiss the federal securities lawsuit.  Shortly after final judgment was entered in the federal declaratory judgment suit and the claims were dismissed in the underlying federal securities action, the investors brought suit in state court against Quinn-L based on the same events and conduct at issue in the federal securities action.  *Id.* at 1290.  Royal Insurance refused to defend Quinn-L in the state-court suit.  The investors obtained a $741 million default judgment.  Quinn-L assigned its claims against Royal Insurance to the investors.  They sued Royal Insurance in Cameron County, Texas state court, seeking damages based on Royal Insurance's refusal to defend Quinn-L in the earlier state-court suit.  A few days later, the investors brought another action in Cameron County state court, seeking a declaration of coverage for the $741 million default judgment.  Royal Insurance sued the investors in federal court and sought to enjoin the Cameron County suits.  Royal Insurance argued that both the relitigation exception and the "necessary in aid of jurisdiction" exception to the

Anti-Injunction Act applied. The federal district court agreed, stating that "absent injunctive relief the Court will likely lose the ability to decide this case (filed well before either [Cameron County] Action) and may well have its prior Judgments (which are inextricably intertwined with the present action) nullified by contrary state court decrees." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 759 F. Supp. 1216, 1235 (N.D. Tex. 1990). The Fifth Circuit reversed in part and held that the "necessary in aid of jurisdiction" exception did not apply. The state-court suits did not pose a threat to "the district court's continuing jurisdiction to decide the post-declaratory judgment claims;" the possibility that the state court could decide the issue first was not enough to invoke the "necessary in aid of jurisdiction" exception. *Quinn-L Capital*, 960 F.2d at 1299. The district court could enjoin the relitigation of issues that had actually been determined in the federal declaratory judgment, but could not enjoin the litigation of all related claims and issues without exceeding the Anti-Injunction Act's limits. *Id.*

Similarly, in the present case, the state-court suits do not threaten this federal court's ability or authority to decide issues raised in both state and federal cases. *See Atl. Coast Line R.R.*, 398 U.S. at 295. The state-court actions do not impair this court's "flexibility and authority" to decide whether the forum-selection agreements are valid and enforceable. The circumstances that generally fall under the second exception to the Anti-Injunction Act – continued state-court litigation after removal or competing jurisdiction over real property – are not present here. Because the exceptions to the Anti-Injunction Act do not apply, this

court cannot enjoin the state-court suits.  Great Lakes's application for an injunction against the continuing prosecution of the state-court actions is dismissed.

Great Lakes also seeks a declaratory judgment that the seamen-plaintiffs may only bring their Jones Act suits in a venue provided in the parties' forum-selection agreements. This would have the effect of enjoining the state-court suits from proceeding.  The Fifth Circuit held in *Tex. Employers' Ins. Assoc. v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) (en banc), *cert. denied*, 490 U.S. 1035 (1989), that if the Anti-Injunction Act bars a federal court from issuing an injunction, the issuance of a declaratory judgment that would have the same effect is also barred.  *See also Am. Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 802 (5th Cir.), *cert. denied*, 530 U.S. 1274 (2000).  To allow a claim for a declaratory judgment that a state-court action cannot proceed, when the Anti-Injunction Act bars a claim for an injunction against that state-court action, would reduce the Act "to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand."  *Jackson*, 862 F.2d at 505.

Fifth Circuit cases since *Jackson* support this court's conclusion that Great Lakes cannot obtain by declaratory judgment the relief precluded by the Anti-Injunction Act.  In *Travelers Insurance Co. v. Louisiana Farm Bureau Federation*, 996 F.2d 774 (5th Cir. 1993), the Fifth Circuit recognized "a very small class of highly distinguishable cases which are exceptions" to the *Jackson* rule.  *Id.* at 776.  The insurer in that case faced the possibility of multiple suits against it in various courts in Louisiana and Mississippi (nineteen when the

14

federal suit was filed) and sought a declaratory judgment in federal court on coverage.  The state actions were at the initial pleadings stage.  The federal declaratory judgment action had been on file for some time and the parties had conducted discovery, making the case "ripe for summary judgment."  *Id.*  The appellate court held that "this case falls outside the broad parameters of *Jackson*" and that the federal declaratory judgment action could proceed.  *Id.* at 778.  In *Royal Insurance Co. v. Quinn-L Capital Corp.*, 3 F.3d 877 (5th Cir. 1993), decided a few months after *Travelers*, the Fifth Circuit held that *Jackson* does not require abstention when the federal declaratory judgment suit is filed substantially before the related state suit, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor effect of overruling a previous state-court ruling.  *Id.* at 886.

Here, unlike *Travelers* and *Quinn-L Capital*, the federal suits were filed one to two months after the state actions.  The same venue issues arise in both the federal and state suits, and the Anti-Injunction Act would prohibit this court from enjoining the state proceedings.  Under *Jackson* and related authority, this court is precluded from granting a declaratory judgment that the seamen-plaintiffs may only bring their Jones Act suits in a venue provided in the forum-selection agreements.  For the reasons explained below, however, this does not preclude Great Lakes from proceeding with its claim for a declaratory judgment that the forum-selection agreements are enforceable and that the seamen-plaintiffs breached those agreements by filing their state-court suits in Cameron, Starr, and Hidalgo Counties rather than in state or federal courts in Harris County, Texas.

15

The seamen-plaintiffs' motions to dismiss Great Lakes's claims for an injunction against the state-court suits and a declaratory judgment that the state-court suits may not proceed are granted.

## B.     The Seamen-Plaintiffs' Motion to Dismiss Great Lakes's Breach of Contract Claims:  Abstention

Great Lakes seeks a declaratory judgment that the seamen-plaintiffs are in breach of the parties' forum-selection agreements.  In addition to declaratory relief, Great Lakes seeks damages for the breach, including the court costs and attorneys' fees incurred in the federal litigation to enforce the agreements.  The seamen-plaintiffs move to dismiss on the basis of abstention, citing *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942).  In response, Great Lakes argues that *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), applies.  Under *Brillhart*, courts have broad discretion to abstain; under *Colorado River*, federal courts may abstain in favor of parallel state-court actions only under "exceptional circumstances."

*Brillhart* abstention applies "[w]hen a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action."  *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994).  "In contrast, when actions involve coercive relief the trial court must apply the standards enunciated by the Court in *Colorado River*."  *Id.* at 951.  "Coercive relief" includes injunctions as well as damages. "When a party seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the doctrine of *Colorado River*; the only potential exception to this

16

general rule arises when a party's request for injunctive relief is either frivolous or is made solely to avoid application of the *Brillhart* standard." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649–50 (5th Cir. 2000) (citing *PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973)).[8]

The Anti-Injunction Act requires dismissal of Great Lakes's claim for an injunction. Great Lakes's remaining claims seek a declaratory judgment as to the validity of the forum-selection agreements and damages in the form of the fees and costs incurred in litigating that issue in federal court. The damages claim does not require the application of *Colorado River*; "boiler plate requests for costs and attorney's fees" do not qualify as a request for "coercive relief" that trigger *Colorado River* analysis. *See Trent v. Nat'l City Bank of Indiana*, 145 F. App'x 896, 898 n.3 (5th Cir. 2005) (unpublished opinion). "To rule otherwise would essentially swallow the entire *Brillhart* doctrine since most complaints contain" such claims for fees and costs. *Id.* Because Great Lakes's remaining claims are only for declaratory relief, fees, and costs, it appears that *Brillhart* applies. Out of an

---

[8] The circuits use different tests to determine whether to apply *Brillhart* or *Colorado River* to cases involving both declaratory and coercive relief. In some circuits, including the Fifth, *Colorado River* applies whenever an action includes claims for declaratory relief and nonfrivolous claims for coercive relief. *See Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002); *see also Village of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999). In other circuits, *Colorado River* applies if the claims for relief other than a declaratory judgment can exist independently of the declaratory judgment claims. *See United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112–13 (9th Cir. 2001). The Fourth Circuit suggests that *Colorado River* applies in any "mixed" complaint scenario. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006). Another view looks to the "heart of the action" to determine which abstention doctrine should apply. *See, e.g., ITT Indus., Inc. v. Pac. Employers Ins. Co.*, 427 F. Supp. 2d 552, 555–56 (E.D. Pa. 2006). Under this standard, if the outcome of the claims for relief other than declaratory judgment hinges on the outcome of the declaratory judgment claims, the *Brillhart* standard governs; otherwise, the *Colorado River* standard controls. *See Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1236 (S.D. Ala. 2006).

abundance of caution, however, the motions to dismiss are also analyzed under *Colorado River*.

### 1.      Abstention under *Brillhart*

*Brillhart* abstention applies "[w]hen a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action."  *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994).  Under *Brillhart*, a district court "should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 494; *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003).

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a). Although the permissive word "may" in section 2201(a) gives a district court more discretion to decline a declaratory judgment action than other kinds of actions, that discretion is limited. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).  In deciding whether to retain or dismiss a federal declaratory judgment action, a district court "must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."

*Sherwin-Williams Co.*, 343 F.3d at 387 (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).   As to the last factor, the Fifth Circuit has identified seven nonexclusive factors that a district court must consider in exercising its discretion to retain or dismiss a declaratory judgment action:

> (1)   whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2)   whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3)   whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4)   whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5)   whether the federal court is a convenient forum for the parties and witnesses;
>
> (6)   whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7)   whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994); *see also Sherwin-Williams Co.*, 343 F.3d at 388 (same); *Vulcan Materials Co.*, 238 F.3d at 390 (same).   These "seven *Trejo* factors . . . must be considered on the record before a discretionary, nonmerits dismissal of a declaratory judgment action occurs."   *Vulcan*

*Materials Co.*, 238 F.3d at 390.  These seven factors address three broad considerations: federalism, fairness and improper forum shopping, and efficiency.  *Sherwin-Williams Co.*, 343 F.3d at 390–91.  The three parts of the *Sherwin-Williams* test, incorporating the seven *Trejo* factors, are addressed below.

### a.    *Justiciability*

A declaratory judgment action is justiciable if "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 838 (5th Cir. 2003).  In the underlying Jones Act suits, the seamen-plaintiffs seek damages for injuries sustained while working for Great Lakes.  In the federal suits, Great Lakes seeks to enforce the parties' forum-selection agreements.  This venue controversy presents a justiciable issue.

### b.    *Authority to Grant Relief*

Under the second part of the *Sherwin-Williams* test, the court must determine whether it has the authority to grant declaratory relief.  "[A] district court does not have authority to consider the merits of a declaratory judgment action when:  (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act, 28 U.S.C. § 2283." *Sherwin-Williams Co.*, 343 F.3d at 388 n.1 (citing *Travelers Ins. Co.*, 996 F.2d at 776).

As to the timing of the lawsuits, the first of these factors, the state-court actions were filed between one and two months before Great Lakes filed its federal suits.  This first factor suggests that the court lacks authority to grant Great Lakes's requested declaratory relief.

The second factor addresses the issues raised.  The state and federal actions both raise the issue of the enforceability of the parties' forum-selection agreements.  In the state cases, Great Lakes objects to venue and has moved to transfer based on the parties' forum-selection agreements.   In the federal cases, Great Lakes seeks to enforce the forum-selection agreements.  Great Lakes also seeks a declaratory judgment in federal court that the seamen-plaintiffs have breached the forum-selection agreements by filing suit in Cameron, Starr, and Hidalgo Counties.  To decide whether Great Lakes is entitled to a declaratory judgment, this court must decide the same issue that is before the state courts:  whether the forum-selection agreements are valid and enforceable.  Like the first factor, the second factor of the *Sherwin-Williams* inquiry supports the contention that this court lacks the authority to grant the declaratory relief that Great Lakes seeks.

The third factor requires an analysis of whether the Anti-Injunction Act precludes the federal court from enjoining the state court suits.  As analyzed above, the Act precludes this court from issuing an injunction against the continued litigation of the state-court actions and from issuing a declaratory judgment that the state-court suits cannot continue.  The Anti-Injunction Act does not, however, prevent this court from issuing a declaratory judgment as to whether the seamen-plaintiffs breached their forum-selection agreements or that the

seamen-plaintiffs have the right to dismiss their Jones Act claims without prejudice to refiling in a venue designated in those agreements. *See* 28 U.S.C. § 2283. The third factor requires a finding that this court does have the authority to grant the declaratory relief that Great Lakes seeks.

c.      *Discretion: The Trejo Factors*

Under the third part of the *Sherwin-Williams* test to determine whether a court should retain or dismiss a federal declaratory judgment action, the court must consider the seven *Trejo* factors. These factors do not warrant dismissing Great Lakes's remaining claims.

The first and seventh *Trejo* factors address the "proper allocation of decision-making between state and federal courts." *Sherwin-Williams*, 343 F.3d at 390–92. Under the first factor, a court examines whether there is a pending state action in which all the matters in controversy may be fully litigated. Under the seventh factor, a court looks at whether the federal court must construe a state judicial decree. In the present cases, although the state and federal court suits involve the same issues relating to the forum-selection agreements, the state courts have not yet decided the issue and this court is not required to construe a state-court decree. While the federalism factors weigh slightly in favor of dismissal, "[t]he parallel exercise of state and federal power is inherent in our government of dual sovereignty." *Newby*, 302 F.3d at 302–04. The weight of the federalism factors is not great.

The second, third, and fourth *Trejo* factors address fairness. The court analyzes whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, whether the

plaintiff engaged in forum shopping, and whether there will be inequities by allowing the declaratory plaintiff to gain precedence in time or to change forums. *Sherwin-Williams*, 343 F.3d at 390–91. Fairness "distinguishes between legitimate and improper reasons for forum selection." *Id.* Great Lakes did not file the federal actions in anticipation of the state-court suits; rather, the federal cases were filed one to two months after the state cases. Nor has Great Lakes engaged in improper forum shopping in bringing these suits, which it filed in a court specified in its forum-selection agreements with the seamen-plaintiffs, in the state where they reside. Finally, there are no inequities in allowing Great Lakes to ask a federal court to determine venue. Great Lakes and the seamen-plaintiffs agreed that any dispute concerning the validity of the forum-selection agreements would be resolved in federal court. The seamen-plaintiffs still have the benefit of the savings-to-suitors clause. In addition, as Great Lakes points out, it is not attempting to litigate the Jones Act claims in federal court. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 219 (5th Cir. 1998). Great Lakes is asking this court to determine the validity of the forum-selection agreements, not to rule on the personal injury claims. The fairness considerations do not weigh in favor of dismissal.

The fifth and sixth *Trejo* factors address the efficiency concern of convenience and the desire to avoid "duplicative or piecemeal litigation where possible." *Sherwin-Williams*, 343 F.3d at 390–91. This court must consider whether the federal court is a convenient forum for the parties and witnesses, and whether retaining the lawsuit would serve the

purposes of judicial economy.  As to the first factor, nothing in the record indicates that state courts in Starr, Cameron, or Hidalgo Counties, or state or federal courts in Harris County, are significantly inconvenient to any party.  The other efficiency concern, judicial economy, does not favor dismissal of the federal actions.  Great Lakes has objected to venue in the state courts and in this court.  Unlike these federal actions, the state-court suits also involve Jones Act claims.  A decision on the enforceability of the forum-selection agreements will resolve where the substantive Jones Act claims will be decided.  The efficiency concerns do not favor dismissal.

In summary, the *Trejo* factors do not favor dismissal of Great Lakes's claims for declaratory judgment as to the enforceability of the forum-selection agreements.  Under the analysis articulated in *Sherwin-Williams*, *Brillhart* does not require this court to abstain from deciding the enforceability of the forum-selection agreements.

The motions to dismiss are also analyzed under *Colorado River*; the result is the same.

### 2.    **Abstention under *Colorado River***

"As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases."  *Colorado River*, 424 U.S. at 817.  "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter."  *Id.* at 813–14.  Federal courts may abstain from deciding an action to preserve "traditional principles of equity, comity, and federalism."  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir. 1988); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142

(8th Cir. 1990).  Whether a federal court should abstain from hearing an action under one of

the abstention doctrines is in the court's discretion.  *See Brown v. Pac. Life Ins. Co.*, 462 F.3d

384, 395 n.7 (5th Cir. 2006) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Practice of

Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

"[T]he potential for conflict" between a federal action and a parallel state action,

standing alone, does not "justify staying of the exercise of federal jurisdiction" under the

*Colorado River* abstention doctrine.  *Colorado River*, 424 U.S. at 816.  As the Supreme Court

explained,

> Generally, as between state and federal courts, the rule is that the
> pendency of an action in the state court is no bar to proceedings
> concerning the same matter in the Federal court having
> jurisdiction. As between federal district courts, however, though
> no precise rule has evolved, the general principle is to avoid
> duplicative litigation. This difference in general approach
> between state-federal concurrent jurisdiction stems from the
> virtually unflagging obligation of the federal courts to exercise
> the jurisdiction given them.

*Id.* at 817 (citations omitted).  Rather than simply considering potential "conflict" between

state and federal litigation, "[t]he policies underlying *Colorado River* abstention are

'considerations of "[w]ise judicial administration," giving regard to conservation of judicial

resources and comprehensive disposition of litigation.'"  *Id.*

As the Supreme Court also explained, "[g]iven this obligation [to exercise jurisdiction

given to federal courts], and the absence of weightier considerations of constitutional

adjudication and state-federal relations, the circumstances permitting the dismissal of a federal

suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention [under previously recognized doctrines]." *Id.* at 818; *see also Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 298 n.4 (8th Cir. 1995) ("Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman*, *Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns."). A federal court may abstain to conserve federal judicial resources only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. Those "exceptional circumstances" must be such that "'repair to the State court would clearly serve an important countervailing interest.'" *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 14 (1983) (quoting *Colorado River*, 424 U.S. at 813).

*Colorado River* abstention applies only if there are parallel state and federal court proceedings. *See Brown*, 462 F.3d at 395 n.7; *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'"). Suits are parallel if they "involv[e] the same parties and the same issues." *Republic Bank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (quoting *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973)); *see Brown*, 462 F.3d at 395 n.7 (quoting *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 734 (9th Cir.1991)). Mere "commonality of subject matter does not amount to the 'contemporary exercise of concurrent jurisdictions.'" *See Dittmer*, 146

F.3d at 118.  Most courts define "parallelism" for purposes of *Colorado River* abstention in terms of "substantially the same parties" litigating "substantially the same issues."  *See, e.g.*, *Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *McIntosh*, 828 F.2d at 1121; *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995); *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992); *Day v. Union Mines, Inc.*, 862 F.2d 652, 655 (7th Cir. 1988).

If state and federal suits are parallel, the federal court must then evaluate whether there are "exceptional circumstances" that make abstention appropriate.  The Supreme Court has identified the following factors to guide the analysis:

(1)    whether there is a *res* over which one court has established jurisdiction;

(2)    the inconvenience of the federal forum;

(3)    whether maintaining separate actions may result in piecemeal litigation;

(4)    which case has priority—not simply looking at which case was filed first; rather, focusing on the relative progress made in each case;

(5)    whether state or federal law controls; and

(6)    the adequacy of the state forum to protect the federal plaintiff's rights.

The first four factors are explicitly identified in *Colorado River*, 424 U.S. at 818.  The Court added the fifth and sixth factors in *Moses H. Cone*, 460 U.S. at 23, 26.

The Supreme Court has cautioned that "[t]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16.  These factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 21.  In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16.  As the Court explained:

> We emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction.

*Id.* at 25–26.

The threshold issue—whether the cases are parallel—and the *Colorado River* factors are analyzed below.

a.      *Parallel Cases*

The threshold issue is whether the state-court cases and these federal suits are "parallel."  The Fifth Circuit has noted that "a mincing insistence on precise identity" of parties and issues is not required to find that cases are parallel.  *McIntosh*, 828 F.2d at 1121; *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992); *MidTexas Int'l Ctr., Inc. v. Myronowicz*, No. 3:05-cv-1957, 2006 WL 2285581, at *2 (N.D. Tex. Aug. 9, 2006).  The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.  *TruServ Corp. v.*

*Flegles, Inc*., 419 F.3d 584, 592 (7th Cir. 2005); *Rowley v. Wilson*, No. 05-30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit). "[A]ny doubt regarding the parallel nature of the [state-court] suit should be resolved in favor of exercising jurisdiction." *TruServ Corp.*, 419 F.3d at 592.

Great Lakes seeks a determination as to the validity of the forum-selection agreements in both the state and federal suits. The state-court suits also—indeed, primarily—raise the Jones Act claims. Although the state suits involve issues that are not present in the federal cases, it is clear that the state-court litigation will dispose of all the claims presented in the federal cases. *See id.* The suits appear to be parallel.

> b.      The Colorado River *Factors*

Under the first *Colorado River* factor, federal-court abstention may be appropriate if a state court first exercises jurisdiction over real property. *Colorado River*, 424 U.S. at 818 (citing *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)). Neither the state nor federal suits involve disputes over real property. The first factor does not weigh in favor of abstention.

The second factor examines whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum." *Moses H. Cone*, 460 U.S. at 19.

Relevant factors are where the suits are pending, where the evidence or witnesses are located, and the availability of compulsory process. *Evanston Ins. Co. v. Jimco, Inc*., 844 F.2d 1185, 1191 (5th Cir. 1988). The state-court suits are pending in South Texas, in the same district in which this court is located, approximately 350 miles away. The witnesses who would be subject to compulsory process in the state-court actions would also be subject to the subpoena powers of this court. *See* FED. R. CIV. P. 45(c)(3)(a) (allowing a federal court to command a subpoenaed party to "travel from any place within the state in which the trial is held"). The second factor does not weigh in favor of dismissal.

The third factor represents the consideration that was "paramount in *Colorado River* itself:" the "danger of piecemeal litigation." *Moses H. Cone*, 460 U.S. at 19. "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Evanston Ins. Co.*, 844 F.2d at 1192. "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction. The real concern at the heart of [this factor] is the avoidance of *piecemeal* litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir. 2000). This factor does not weigh in favor of abstention.

Under the fourth factor, which examines which case has priority, the order in which jurisdiction was obtained "'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Evanston*

*Ins. Co.*, 844 F.2d at 1190 (quoting *Moses H. Cone*, 460 U.S. at 21).  The state and federal suits in the cases at hand appear to have progressed along similar paths.  Motions to dismiss are pending in both the state and federal cases.  There is no indication that discovery has begun in the state-court cases.  This factor does not weigh in favor of abstention.

The fifth factor asks whether and to what extent federal law provides the rule of decision on the merits.  "The absence of a federal law issue does not counsel in favor of abstention . . . . The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at 1193 (quoting *Moses H. Cone*, 460 U.S. at 26).  Federal maritime law governs both the seamen-plaintiffs' Jones Act claims and the federal-court challenges to the enforceability of the forum-selection agreements.  *See Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997).  The fifth factor weighs in favor of retaining jurisdiction.

The sixth factor asks whether the state-court action will adequately protect the rights of the federal-court plaintiff, Great Lakes.  This factor "can only be a neutral factor or one that weighs against, not for, abstention.  A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings." *Evanston Ins. Co.*, 844 F.2d at 1193.  The state courts are competent to determine the enforceability of the parties' forum-selection agreements.  The sixth factor does not weigh in favor of abstention.

In summary, the state and federal suits appear to be parallel and none of the *Colorado River* factors weighs in favor of abstention.  This case does not present "exceptional circumstances" that warrant abstention under *Colorado River*.  The motions to abstain are denied as to Great Lakes's claims for a declaratory judgment that the seamen-plaintiffs breached the parties' forum-selection agreements and that those plaintiffs have the right to dismiss their current state-court suits without prejudice to refiling in a venue provided in the forum-selection agreements.

## IV.    The Validity of the Forum-Selection Agreements

The seamen-plaintiffs argue that the agreements are unenforceable against domestic seamen asserting Jones Act claims.  The seamen-plaintiffs primarily rely on two cases holding that in Jones Act cases involving domestic seamen, forum-selection agreements are unenforceable as against public policy.  The two cases are *Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922 (S.D. Tex. 2004), and *Nunez v. Am. Seafoods*, 52 P.3d 720 (Alaska 2002). Great Lakes responds that a recent Fifth Circuit case, *Terrebonne v. K-Sea Transportation Corp.*, 477 F.3d 271, 280–86 (5th Cir. 2007), has undercut the basis for the holdings in *Boutte* and *Nunez*.  One of the seamen-plaintiffs, Larrisquitu, also argues that he signed his forum-selection agreement under circumstances that make it unenforceable.  Larrisquitu asserts that although the agreement was presented to him in Spanish as well as in English, he is functionally illiterate in Spanish.  Because that challenge rests on matters outside the pleadings, Larrisquitu's motion to dismiss is converted to one for summary judgment.  The

public-policy challenge to the agreements may be resolved on the basis of the motions to dismiss.

### A.    The Seamen-Plaintiffs' Challenge to the Forum-Selection Agreements

The seamen-plaintiffs recognize that forum-selection clauses are presumptively valid and enforced unless they are unreasonable, the result of overreaching or fraud, or against public policy.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (citing *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 15 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.")); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) ("The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid."); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 n.16 (5th Cir. 1998) ( "[A] valid forum selection clause is given controlling weight in all but most exceptional cases."); *Calix-Chacon v. Global Int'l Marine, Inc.*, --- F.3d ---, 2007 WL 2056505, at *2–5 (5th Cir. July 19, 2007) (same).  An opposing party may show that enforcement would be unreasonable.  *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).

The parties do not dispute that the forum-selection agreements must be signed for an individual to work on vessels operating in nonunion areas.  The agreements are entitled "Employee Acceptance of Forum Selection" and state, in part, that "[t]he following terms are conditions of the Employee's employment with Great Lakes Dredge & Dock Company, and,

by executing below, the Employee acknowledges his acceptance of these conditions of employment.  Employee acknowledges that he/she has been offered continued employment on the condition that he/she shall agree to the conditions set forth herein as they shall apply to the Employee's employment with Great Lakes Dredge & Dock Company . . . ."  (Civil Action No. 4:06-cv-3489, Docket Entry No. 1, Ex. A).  The forum-selection agreements are a condition of employment and form part of the seamen-plaintiffs' employment contracts.  *See Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 392 (5th Cir. 2003) (holding that an employer's letter informing seamen-employees of a new mandatory arbitration policy was an unenforceable arbitration agreement under the Federal Arbitration Act's exemption under Section 1, which applies to arbitration agreements in seamen's employment contracts); *cf. Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 278–80 (5th Cir. 2007) (holding that a postinjury agreement to arbitrate was not part of a seaman's employment contract and not subject to the Federal Arbitration Act's Section 1 exemption); *Garza Nunez v. Weeks Marine, Inc.*, No. 06:3777, 2007 WL 496855, at *3 (E.D. La. Feb. 13, 2007) (same, and noting that "[n]o language exists in the contract itself that indicates the Plaintiff's acceptance of the agreement as a condition of his continued employment, nor does it otherwise modify the Plaintiff's employment status or alter the terms of his employment.").

In *Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922 (S.D. Tex. 2004), the court held on public policy grounds that forum-selection clauses are unenforceable in Jones Act suits brought by domestic seamen against their domestic employers.  The *Boutte* court recognized

the cases holding that forum-selection clauses were presumptively valid, but distinguished them on the ground that they involved foreign seamen suing foreign employers for personal injuries.  The *Boutte* court held that in these cases, the international context made it more important to enforce a forum-selection clause than in cases involving domestic litigants.  The *Boutte* court held that this "international flavor" that characterized suits such as *Marinechance*, 143 F.3d 216, which enforced forum-selection agreements between Filipino seamen and their Cypriot employer requiring suit in the Philippines, was absent from Jones Act cases filed by domestic seamen against domestic employers.

The *Boutte* court identified the statutory and case law basis for this public policy making forum selection agreements unenforceable in Jones Act cases filed by domestic seamen as the venue provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* and the case law construing those provisions.  The *Boutte* court assumed that the FELA venue provisions applied to Jones Act cases.  Because the Supreme Court had held in *Boyd v. Grand Trunk Western Railroad Co.*, 338 U.S. 263 (1949), that forum-selection clauses in FELA cases were unenforceable as a matter of law, the *Boutte* court held that forum-selection clauses were also unenforceable in Jones Act suits.  *Boutte*, 346 F. Supp. 2d at 932.

The Jones Act states:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer.  Laws of the United States regulating

35

> recovery for personal injury to, or death of, a railway employee
> apply to an action under this section.

46 U.S.C. § 30104(a).  In *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958), the

Supreme Court held that the Jones Act incorporates not only the FELA statutes but also its

"entirely judicially developed doctrine of liability."  *Kernan*, 355 U.S. at 439; *see also Pure*

*Oil Co. v. Suarez*, 346 F.2d 890, 892 (5th Cir. 1965) ("Instead of devising separate standards

to be applied in personal injury suits by seamen Congress adopted the expedient of

incorporating by reference the more detailed provisions which govern the liability of railroads

to their employees."), *aff'd on other grounds*, 384 U.S. 202 (1966).

The FELA provides a cause of action to railroad workers injured by their employer's

negligence, prohibits employers from contractually exempting themselves from FELA, and

has a venue provision that allows an injured worker to bring suit in the district where his

employer resides, where the cause of action arose, or where his employer does business at the

time the claim arose.  45 U.S.C. §§ 55, 56.  In *Boyd,* the Supreme Court held that a forum-

selection clause between a railroad employee and his railroad employer was invalid.  The

forum-selection clause in that case required the employee to waive his right to bring suit in

any forum other than where he lived or where the injury occurred.  *Boyd*, 338 U.S. at 266.

The Court held that the FELA provided railroad employees a "substantial right" to select the

forum for suit, and it reasoned that enforcing the forum-selection clause would have the effect

of enabling the employer contractually to exempt itself from liability (in specific venues, at

least), which is prohibited under section 55 of that Act.  *Id.* at 265 ("We hold that petitioner's

right to bring suit in any eligible forum is a right of sufficient substantiality to be  included within the Congressional mandate of [section 55].").  Because the forum-selection clause would have the effect of exempting the employer from liability in particular venues, the Court declared the clause "void."  *Id.*

The district court in *Boutte*, "finding itself at sea" without clear guidance on the enforceability of forum-selection clauses in Jones Act cases involving domestic seamen and employers, held that because the FELA venue provisions applied, such forum-selection clauses were unenforceable under *Kernan* and *Boyd*.  *Boutte*, 346 F. Supp. 2d at 932.  The *Boutte* court reached this result notwithstanding the presumption under *Bremen* that forum-selection clauses are valid and enforceable.  *Boutte*, 346 F. Supp. 2d at 932.

In *Nunez v. American Seafoods*, 52 P.3d at 721, the court reached a similar result, relying on reasoning similar to *Boutte*.  In *Nunez*, a domestic seaman who sustained injuries while working aboard his employer's vessel had signed an employment contract with a clause specifying the federal district court in Washington State as the venue for litigating disputes. The seaman sued in the Alaska Superior Court.  On appeal from the Superior Court's dismissal enforcing the forum-selection clause, the Alaska Supreme Court reversed.  Finding that Congress intended the Jones Act to modify the substantive rules of maritime law, the Alaska Supreme Court distinguished *Bremen* and *Carnival Cruise Lines* as products of general maritime law, not of "maritime law as modified by the Jones Act, which incorporates FELA."  *Nunez*, 52 P.3d 723.  Because the Jones Act "effectively places an injured seaman

. . . in the shoes of an injured FELA worker," the Alaska Supreme Court found that FELA's prohibition of forum-selection agreements, as articulated by the Supreme Court in *Boyd*, applied to suits brought under the Jones Act. *Id.* at 722.

Since *Boutte* and *Nunez* were decided, the Fifth Circuit has decided *Terrebonne*, 477 F.3d 271, which undercuts a significant part of the basis for their holdings. In *Terrebonne*, a domestic seaman suffered a hernia injury while working aboard the defendant's ship. The parties partially settled the personal injury claim. As part of the settlement, the plaintiff agreed to arbitrate any remaining disputes, including any Jones Act claims, in New York. After a recurrence of his hernia, the plaintiff filed a Jones Act suit in a Texas federal court. In response to a motion to dismiss, the plaintiff argued that the arbitration clause was unenforceable in part because under *Boyd*, forum-selection clauses are unenforceable in Jones Act suits. *Id*. at 275. On appeal, the Fifth Circuit held that, contrary to the assumption the court made in *Boutte,* the FELA's venue provision and accompanying case law (including the case law prohibiting forum-selection clauses) did not apply to Jones Act suits. Because the Jones Act has its own venue provision, which states that "[a]n action under this section shall be brought in the judicial district in which the employer resides or the employer's principal office is located," 46 U.S.C. § 30104(b), the Fifth Circuit found that the Jones Act cannot be interpreted as incorporating FELA's venue provision.

The Fifth Circuit based its analysis in *Terrebonne* on an earlier opinion, *Pure Oil Co. v. Suarez*, 346 F.2d 890 (5th Cir. 1965), which addressed the relationship of the venue provisions in the FELA and the Jones Act:

> . . . Congress has seen fit to impose different venue requirements in Jones Act cases.  To now hold that the venue requirements under the Federal Employers' Liability Act are controlling would negate the plain language of [the Jones Act]." *Rodriquez v. United Fruit Co.*, 236 F. Supp. 680, 682 (E.D. Va. 1964).  We are not persuaded to hold otherwise merely because the two other provisions of [the FELA] have been held applicable in Jones Act cases.  Neither of the subjects covered by those provisions is dealt with specifically in the Jones Act, and they would thus be fairly covered by the general reference to the FELA.  *See Panama R. Co. v. Johnson*, 264 U.S. 375, 392 (1924).

*Pure Oil Co.*, 346 F.2d at 892.  In *Terrebonne*, the court stated that "[b]ecause under our decision in *Pure Oil Co.*, the venue provisions of . . . the FELA are inapplicable to Jones Act cases, it necessarily follows that nothing in [FELA's venue provision] is applicable to Jones Act venue." As a result, the court concluded, neither *Boyd* nor the FELA's venue statute could apply to determine whether the arbitration clause at issue was enforceable.  477 F.3d at 282–83; *see also Edah v. Trident Seafoods Corp.*, No. 2:06-cv-554, 2007 WL 781899, at *2–3 (S.D. Ohio March 12, 2007) (finding the FELA's prohibition on forum-selection agreements inapplicable to Jones Act suits); *Garza Nunez v. Weeks Marine, Inc.*, No. 06-3777, 2007 WL 496855, at *6 (E.D. La. Feb. 13, 2007) (holding that *Boyd* and the FELA do not preclude enforcement of a Jones Act seaman's postinjury arbitration agreement).

The seamen-plaintiffs argue that *Terrebonne* is distinguishable because it dealt with an arbitration clause in a settlement agreement, not a forum-selection clause in an employment contract. This distinction was important to the Fifth Circuit in its analysis of the arguments as to the arbitration agreement's validity under the Federal Arbitration Act (FAA). The FAA exempts from compelled judicial enforcement arbitration agreements in contracts for the employment of seamen, railroad employees, and other workers engaged in interstate commerce. *See Terrebonne*, 477 F.3d at 278. Because the arbitration agreement was in a settlement agreement, rather than in an employment contract, the Fifth Circuit found that the FAA did not apply to make the arbitration agreement unenforceable. *Id.* at 280. This argument does not apply to a forum-selection clause, which is not subject to the FAA.[9]

However, the plaintiff in *Terrebonne* also attacked the arbitration agreement by arguing that it was unenforceable under the Jones Act because that Act incorporated the FELA venue provisions and related case law invalidating forum-selection clauses. In analyzing this independent argument, the Fifth Circuit did not focus on the fact that the case involved an arbitration rather than a forum-selection agreement. To the contrary, the Fifth Circuit directly addressed the broader argument raised by the plaintiff in *Terrebonne* – that the Jones Act

---

[9]An arbitration provision in a seaman's employment agreement is unenforceable under the FAA. A federal court must compel arbitration if "a maritime transaction or contract evidencing a transaction involving commerce" contains a written arbitration agreement. 9 U.S.C. § 2. Section 1 of the FAA specifically excludes employment contracts of seamen and railroad employees. *Id.*, § 1; *Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 394 (5th Cir. 2003). If the arbitration clause at issue in *Terrebonne* had been in an employment agreement, it would have been unenforceable.

40

incorporates the FELA – and found this argument unpersuasive in light of the court's prior analysis of the Jones Act's venue provisions in *Pure Oil*.  *See Terrebonne*, 477 F.3d at 282.

The *Terrebonne* court was not confronted with a forum-selection agreement.  The court did not expressly address whether its holding as to the enforceability of arbitration agreements would apply to forum-selection agreements.   But the fact that *Terrebonne* involved an arbitration rather than a  forum-selection agreement does not affect the clear holding that the FELA venue provisions do not apply in Jones Act cases, as the courts in *Boutte* and *Nunez* assumed.  *Terrebonne* eliminates the statutory basis for the result in *Boutte* and *Nunez* — that the FELA venue provisions are incorporated into the Jones Act and make forum-selection clauses in  Jones Act cases unenforceable.  The *Boutte* court identified the FELA venue provisions incorporated into the Jones Act as the public policy exception to the presumptive validity of forum-selection clauses.

If the FELA venue provisions are not incorporated into the Jones Act, is there another basis to find a public policy against enforcing forum-selection agreements against domestic seamen asserting Jones Act claims?  The *Boutte* court identified the generally protected status of domestic seamen asserting Jones Act cases, but this was not enough in *Boutte* to make the forum-selection clause unenforceable.  To the contrary, the court in *Boutte* relied on the incorporation of the FELA venue provisions and case law making forum-selection agreements unenforceable under those provisions.  The general protection afforded to domestic seamen does not provide a sufficient basis for invaliding the forum-selection agreements. *Terrebonne*

demonstrates that the protected status of domestic seamen does not exempt seamen from being bound by contracts that limit the tribunals for resolving claims, including claims under the Jones Act. *Terrebonne* involved a domestic seaman asserting a Jones Act claim. The court held that arbitration clauses (other than in an employment agreement) are enforceable against such plaintiffs. *Terrebonne*, 477 F.3d at 285. The existence of section 1 of the FAA does not support a general public policy against enforcing arbitration or forum-selection agreements against domestic seamen. Section 1 of the FAA by its terms applies to all workers in foreign and interstate commerce, making no distinction between foreign and domestic workers. 9 U.S.C. § 1.

The court in *Boutte* noted that the general presumption in favor of forum-selection clauses applied to maritime cases, not Jones Act cases. *Boutte*, 346 F.Supp.2d at 926. Although the Supreme Court was sitting in admiralty when it held that forum-selection clauses are presumptively enforceable in *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 15 (1972), courts have extended this principle to cases beyond the admiralty context of *Bremen*. *See, e.g., Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789–92 (8th Cir. 2006) (finding that, "[u]nder Bremen, 'forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid'"); *Am. Soda, LLP v. U.S. Filter Wastewater Group*, 428 F.3d 921 (10th Cir. 2005) (determining that enforcement of a forum selection clause is "fair and reasonable" because "[t]here is certainly nothing in the record before us to show that 'enforcement would be unreasonable or unjust, or that the clause is invalid for such

reasons as fraud or overreaching'") (citing *Bremen*, 407 U.S. at 15); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298–99 (5th Cir. 2004) (enforcing a forum-selection clause in a suit for overtime pay because the plaintiffs failed to provide evidence that the clause "placed an unreasonable burden on any of them individually" such that the clause would prevent them "from vindicating any of their statutory rights"); *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 389 (1st Cir. 2001) (holding that, under *Bremen*, a forum-selection clause is enforceable unless enforcement is unjust or unreasonable, or if the clause is invalid for such reasons as fraud or overreaching, and that enforcement of a clause "printed clearly in plain language in a contract of reasonable length"was not unreasonable); *Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 867–68 (9th Cir. 1991) (applying the *Bremen* framework of analysis and finding the clause at issue to be enforceable because plaintiff employee failed to offer evidence of unreasonableness or fraud).

In *Boutte*, the court emphasized that there were public policy reasons to support enforcing forum-selection agreements in cases involving foreign seamen asserting Jones Act claims, reasons absent from cases involving domestic seamen. The Fifth Circuit has clearly recognized the enforceability of forum-selection agreements in cases involving foreign seamen. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221 (5th Cir. 1998); *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 278 (5th Cir. 2002). In *Marinechance*, the Fifth Circuit upheld a forum-selection clause in a Filipo seaman's employment contract that required the seaman to litigate in the Philippines rather than in Louisiana state-court. In

*MacPhail*, 302 F.3d at 276, the Fifth Circuit reversed a district court's ruling invalidating a forum-selection clause in a postaccident release and held that requiring a foreign seaman to litigate his Jones Act claim in Australia was reasonable and enforceable.   The cases do not, however, limit the enforceability of forum-selection agreements to international disputes. Rather, the presumption of validity applies to cases involving domestic litigants.  *See Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 607 (7th Cir. 2003) (in a case involving a domestic plaintiff, stating that "[i]n admiralty cases, forum-selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances" and finding that the district court properly dismissed a suit filed outside the forum selected in the agreement); *cf. Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298–99 (5th Cir. 2004) (enforcing a forum-selection clause in a suit for overtime pay involving domestic litigants because the plaintiffs failed to provide evidence that the clause "placed an unreasonable burden on any of them individually" such that the clause would prevent them "from vindicating any of their statutory rights"); *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 389 (1st Cir. 2001) (holding that in a suit involving domestic litigants, a forum-selection clause is enforceable unless enforcement is unjust or unreasonable, or if the clause is invalid for such reasons as fraud or overreaching, and that enforcement of a clause "printed clearly in plain language" in an employment contract "of reasonable length"was not unreasonable); *Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 867–68 (9th Cir. 1991) (applying the *Bremen* framework and finding a forum-selection clause

in an employment agreement to be enforceable because plaintiff employee failed to offer evidence of unreasonableness or fraud).  Although there may be added public policy reasons for enforcing forum-selection agreements in international disputes, that does not equate to public policy reasons *against* enforcing such agreements in domestic disputes.

The court in *Terrebonne* noted that the FAA itself represents a strong public policy in favor of enforcing arbitration agreements.  *Terrebonne*, 477 F.3d at 285.  The seamen-plaintiffs argue that this public policy support is absent in cases involving forum-selection agreements.  Public policy may be reflected in case law as well as a statute.  *See Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Intern.*, 861 F.2d 665, 673 (1988) ("In addition to state statutes and federal regulations, case law also helps define public policy.").  Cases reflect a strong public policy in favor of forum-selection agreements.  *See Bremen*, 407 U.S. at 10 (finding that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *see also Scherk*, 417 U.S. at 519 (affirming *Bremen*'s holding); *Mitsui*, 111 F.3d at 35 (interpreting *Bremen* as holding that the presumption of a forum- selection clause's validity may be overcome "only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court").  Additionally, the courts have recognized that arbitration clauses and forum-selection clauses have important elements in common.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (stating that an arbitration clause is a "kind of forum-selection clause");

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (noting that foreign arbitration clauses are a subset of foreign forum-selection clauses in general). It is somewhat anomalous to argue that the  public policy of protecting seamen prohibits enforcing forum-selection clauses but allows arbitration clauses (at least those not contained in employment agreements). Forum-selection clauses limit the courts in which a seaman may file his case but do not otherwise oust the seaman from the judicial system. Arbitration agreements, by contrast, deprive a seaman of the ability to have his case heard by a court at all.

One other factor the court in *Boutte* relied on to invalidate the forum-selection agreement in that case is missing in the present case. The court in *Boutte* emphasized that the forum-selection agreement that the seaman-plaintiff had signed in that case was invalid under Louisiana law, where the seaman wanted to sue. In the present case, the seamen-plaintiffs similarly argue that under Texas law, the forum-selection agreement is unenforceable. Until recently, Texas courts and federal courts used different analyses to determine the enforceability of mandatory forum-selection clauses. *See Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 611–14 (Tex. App.—Houston [1st Dist.] 2005, no pet.). However, the Supreme Court of Texas recently adopted the federal standard for analyzing such clauses. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *In re Automated Collection Tech., Inc.*, 156 S.W.3d 557, 558–59 (Tex. 2004); *In re AIU Ins. Co.*, 148 S.W.3d 109, 111–14 (Tex. 2004); *Phoenix Network Techs. (Europe), Ltd.*, 177 S.W.3d at 614. Even before Texas adopted the federal standard for

determining the enforceability of forum-selection clauses, the Texas courts looked to federal law in determining the validity of forum-selection clauses in maritime actions.  *See Stobaugh v. Norwegian Cruise Line, Ltd.*, 5 S.W.3d 232, 234–36 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (applying federal maritime law to a suit involving a forum-selection clause in a cruise-line passenger ticket).   Although the Texas legislature recently enacted a mandatory venue provision applicable in all Jones Act cases brought within the State, that statute does not apply to suits filed before its effective date, May 24, 2007.  *See* TEX. CIV. PRAC. & REM. CODE § 15.0181 (Historical and Statutory Notes).[10]  Nor is it clear that this venue provision would trump Texas's policy of presuming forum-selection clauses valid.  *See Holten*, 168 S.W.3d at 793; *In re Autonation, Inc.*, --- S.W.3d ---, 2007 WL 1861341, at *3–4 (Tex. June 29, 2007).   The forum-selection agreements in the present cases are not invalid under Texas law.  This distinguishes the present case from *Boutte* and removes another basis for finding the forum-selection agreement unenforceable.

---

[10]  Section 15.0181 provides, in relevant part:

> Except as provided by this section, a suit brought under the Jones Act shall be brought:
>
> > (1)    in the county where the defendant's principal office in this state is located;
> >
> > (2)    in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; or
> >
> > (3)    in the county where the plaintiff resided at the time the cause of action accrued.

TEX. CIV. PRAC. & REM. CODE § 15.0181(c).

In summary, *Terrebonne* removed the statutory underpinning for the holding in *Boutte* and *Nunez* that forum-selection agreements are unenforceable in Jones Act claims brought by domestic seamen.  The seamen-plaintiffs in the present case have not identified another basis for a public policy making the forum-selection agreements in this case unenforceable.  Although *Marinechance* and related cases do involve foreign seamen, the enforceability of the forum-selection clauses in those cases does not turn on whether the seamen were domestic or foreign.  Instead, the issues are whether the forum-selection agreements were unreasonable or the product of fraud or overreaching, or void as against public policy.  Applying the factors identified in *Bremen*, *Carnival Cruise Lines*, and the *Marinechance* line of cases shows that the forum-selection agreements at issue here are reasonable.  The forum-selection agreements allow the seamen-plaintiffs to select from a number of alternative venues.  The agreements allow a seaman-plaintiff to sue in the specified state or federal court in the state where the plaintiff resides or the accident occurred.  Suit may also be brought in the Circuit Court for DuPage County, Illinois, where Great Lakes has its principal place of business.  (Civil Action No. 4:06-cv-3489, Docket Entry No. 1, Ex. 1).  The agreements do not eliminate the plaintiff's ability to bring suit in state court as opposed to federal court.  Rather, the agreements prescribe particular state- and federal-court venues where suit may be brought.  In the present case, the venues available under the forum-selection agreements are the state or federal courts in Harris County, Texas.  This location is not so far from the South Texas

counties where the seamen-plaintiffs chose to file suit, nor so inconvenient for witnesses, nor so removed from sources of evidence, as to be unreasonable. *See MacPhail*, 302 F.3d at 278.

Without the statutory basis on which *Boutte* and *Nunez* relied to find forum-selection agreements involving domestic seamen unenforceable, and with no other statutory or case law basis for finding that such agreements generally offend public policy, the established factors for analyzing such clauses apply. That analysis shows no basis for invalidating the agreements as against public policy. Based on the applicable authority and this record, this court does not find a principled basis on which to conclude that the forum-selection agreements in these cases are unenforceable as a matter of law.

One of the seamen-plaintiffs, Julio Larrisquitu, has alleged that the agreement he signed is unenforceable because it resulted from overreaching. He has submitted affidavits explaining that he is illiterate in Spanish and could not read what he signed. Because these materials require this court to examine matters outside the pleadings and attached documents, this aspect of the motion to dismiss must be converted into one for summary judgment. Larrisquitu has until September 28, 2007 to expand the record relating to his argument that the forum-selection agreement is unenforceable because it resulted from overreaching; Great Lakes has until October 19, 2007 to respond.

## IV.    Conclusion

Quintanilla's and Arredondo's motions to dismiss are denied. Great Lakes's claims for injunctive relief prohibiting the state suits from proceeding and for a declaration that the

seamen-plaintiffs may only bring suit in a forum provided in the forum-selection agreements are dismissed with prejudice.   Larrisquitu's motion to dismiss is denied in part and his remaining argument that the forum-selection agreement is unenforceable as to him because it was procured by overreaching is converted into a motion for summary judgment.   Discovery limited to that issue is to be conducted by September 28, 2007.   Larrisquitu may supplement the summary judgment record no later than October 19, 2007.   Great Lakes's response is due by November 9, 2007.

SIGNED on August 15, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge